Aubrey H. PERRY, Jr. and Christine Perry, f/k/a Christine P. Robey, Appellants,

v.

CENTRAL BANK & TRUST COMPANY, Appellee.

No. 90-CA-603-MR.

Court of Appeals of Kentucky.

March 29, 1991.

Discretionary Review Denied by Supreme Court Aug. 21, 1991.

Winifred L. Bryant, Lexington, for appellants.

Joni D. Tackett and Earl S. Wilson, Jr., Lexington, for appellee.

Before EMBERTON, HOWERTON and MILLER, JJ.

HOWERTON, Judge.

Aubrey Perry (Perry) and Christine P. Robey (Christine) appeal from a default judgment entered in favor of Central Bank & Trust Company (Central Bank). Perry contends that the trial court erred (1) in finding that it had personal jurisdiction over him, (2) in granting the default judgment, and (3) in denying the post-judgment motions. Christine concedes the issue of jurisdiction as to her, but relies on the latter two issues on appeal. We affirm.

This action began when Padgett Construction Company filed suit to enforce a mechanics' and materialmen's lien in the amount of $5,416.73 for improvements to the residence of Christine and Frederick Robey (Robey). That complaint was filed on June 22, 1989, against Robey, his wife Christine, Citizens Fidelity Bank & Trust Company of Lexington (Citizens), and Central Bank.

Citizens held the first mortgage on the property in the principal amount of $125,-000. Central Bank held a second mortgage on the same property as security for a loan to Robey and Christine in the principal amount of $500,000. That mortgage-note was executed on June 29, 1987, and provided that Robey and Christine were jointly and severally liable on the note. In addition, the note was secured by a deed of trust to some property in Virginia Beach, Virginia. The note was payable in equal monthly installments of $5,311.75, with a balloon payment of the balance due on or before June 29, 1988. Although no mention is made in the note as to the purpose of the loan, it was used to acquire an interest in Bristol's Restaurant in Lexington, Kentucky.

On June 8, 1987, Christine's father, Aubrey Perry, signed a guaranty agreement in which he agreed to be liable up to $135,-000 for any indebtedness of Christine and Robey to Central Bank incurred on or before June 30, 1988. This agreement began, "For good and valuable consideration, the receipt of which is hereby acknowledged, and in order to induce Central Bank & Trust Co. . . . to extend credit to Frederick R. Robey and Christine Robey. . . ." This agreement was mailed to Perry, a Virginia resident, in Virginia, where it was signed and then it was mailed back to Central Bank. A few months later, Christine and Robey also signed another note in the principal amount of $65,000, due and payable in full on or before April 4, 1988. This note was secured by assignment of a sales contract for $350,000 on the Virginia Beach property, and the parties have treated this note as if it were also secured by the guaranty agreement, presumably because of the language in the latter concerning liabilities incurred on or before June 30, 1988.

Christine and Robey managed to reduce the principal owed to Citizens on the first mortgage to some $96,760, and they paid the other two notes down to $209,977.43 and $20,000, respectively. At some point, Robey and Christine separated and divorced, and Christine moved back to Virginia. As mentioned, suit was begun to enforce the construction liens and the residence was subject to foreclosure sale. Because of the guaranty agreement, Central Bank sought to join Aubrey Perry as a third-party defendant by motion made July 19, 1989. This motion was granted on August 7, 1989. The house was ultimately sold by private sale for $185,000. The first mortgage to Citizens was satisfied, and Central Bank received $70,306.70 from the proceeds toward satisfaction of its second mortgage. Thus, approximately $162,000 of the principal remained owing from the two promissory notes. Central Bank sought to collect the debt from Robey, Christine, and/or Perry. When the three failed to file answers to Central Bank's cross-claim within 20 days, CR 12.01, the bank filed a motion for default judgment on October 10, 1989. Robey then answered by informing the court that he had filed for protection under the federal bankruptcy laws on October 9, 1989.

Christine filed a notice of entry of appearance on October 20, 1989, and Perry filed a notice of special entry of appearance on the same day; both filed affidavits and a response to the motion for default judgment. The trial court granted the default judgment against Christine and Perry on November 16, 1989, and post-judgment motions were filed on November 27, 1989, including a motion pursuant to CR 52.02 for findings of fact and conclusions of law regarding the question of personal jurisdiction over Perry. A hearing was held on the motions and all were denied by order entered March 14, 1990. That order stated that the court had personal jurisdiction over Perry pursuant to KRS 454.210. It is from the entry of default judgment that Christine and Perry bring this appeal.

▆▆▆ Perry challenges the trial court's assertion of jurisdiction because he was never in Kentucky concerning the guaranty note, his signature was solicited by the bank, and the note was sent to him in Virginia where he signed it and mailed it back to the bank. Our long-arm statute is KRS 454.210, and it is designed to permit the exercise of personal jurisdiction over nonresident defendants while complying with federal constitutional requirements of due process. *Texas American Bank v. Sayers*, Ky.App., 674 S.W.2d 36, 38 (1984), *cert. denied*, 469 U.S. 1211, 105 S.Ct. 1180, 84 L.Ed.2d 328 (1985). Kentucky's long-arm statute allows its courts "to reach to the full constitutional limits of due process in entertaining jurisdiction over non-resident defendants." *Mohler v. Dorado Wings, Inc.*, Ky.App., 675 S.W.2d 404, 405 (1984). Due process requires that a nonresident defendant have certain minimum contacts with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. State of Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 343, 85 L.Ed. 278 (1940); *see also Mohler*, 675 S.W.2d at 405. To determine the outer limits of personal jurisdiction based on a single act, the following three-part test has been put forth:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Southern Machine Co. v. Mohasco Industries, Inc.*, 401 F.2d 374, 381 (6th Cir.1968), citing *McGee v. International Life Insurance Co.*, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), and *Hanson v. Denckla*, 357 U.S. 235, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958).

The statute itself reads in pertinent part:

> (2)(a) A court may exercise personal jurisdiction over a person who acts di-

rectly or by an agent, as to a claim arising from the person's:

1. Transacting any business in this Commonwealth;

....

(3)(a) When personal jurisdiction is authorized by this section, service of process may be made on such person, or any agent of such person, in any county in this Commonwealth, where he may be found, or on the secretary of state who, for this purpose, shall be deemed to be the statutory agent of such person.... KRS 454.210.

A case which this Court found helpful, but which was not cited by either party, is *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134 (6th Cir.1982). In that case, a North Dakota resident, who never set foot in Kentucky, was subject to personal jurisdiction in this state by the signing of a personal guaranty agreement in North Dakota. The nonresident's husband was a vice-president and shareholder of a company whose principal place of business was Louisville. Her only relationship with Kentucky was the signing of the agreement and her marital interest in her husband's stock in the company. The company failed, and she and other guarantors were sued in federal district court.

The court found that the three-part test of *Southern Machine, supra,* was met by all guarantors involved. The court stated that the defendants voluntarily signed the agreements, "without which credit would not have been furnished." 674 F.2d at 1137, and the guarantors knew the business was to be located in Kentucky. "Signing a personal guaranty for a Kentucky business in which one has an economic interest is the sort of 'conduct and connection with the forum state' that makes it reasonable to 'anticipate being haled into court there' when the underlying contract is breached." *National Can, supra,* 674 F.2d at 1138, quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 287, 100 S.Ct. 559, 562, 62 L.Ed.2d 490 (1980). The court determined that the guaranties were essential for the start-up of the enterprise and that they constituted "the sort of purposeful act contemplated ... in *Southern Machine.*" 674 F.2d at 1138.

The court in *National Can* also found that the second prong of the test was met because the agreements were the basis for the action. 674 F.2d at 1138. The court then concluded that there was sufficient connection with the forum state to make the exercise of jurisdiction reasonable, reciting that the guarantors voluntarily signed the agreements, Kentucky was chosen as the business situs, the guaranties were vital to the establishment of the business, and the operation had a realistic impact on the commerce of Kentucky. *Id.*

Comparing the facts of *National Can* to the present case, we find several similarities. While he may not have sought out Central Bank, Perry's act of signing the guaranty certainly caused a consequence in this state, because the $500,000 would not have been loaned to Perry's daughter and Robey had it not been for Perry's signature on the guaranty. *See National Can,* 674 F.2d at 1137. The agreement also provided that it shall be "in all respects governed, construed, applied and enforced in accordance with the laws of [Kentucky]." Although not an explicit consent to jurisdiction, this language put Perry on notice that he could expect any legal ramifications to be dealt with in Kentucky.

Furthermore, Perry's agreement was the basis for the loan and acquisition of the interest in Bristol's, *cf. National Can,* 674 F.2d at 1138, and so the cause of action arose from his act of guaranteeing the note.

Perry's act of signing the agreement also had a substantial enough connection with Kentucky to make personal jurisdiction reasonable. He knew that he was guaranteeing loans extended in this state for his son-in-law to acquire an interest in a business here, and he also knew that should Christine and Robey fail to make payments or if the business venture failed, he would be looked to for payment. While he did not acquire any economic interest in the business himself, he certainly had a stake in its success. The court in *Davis H. Elliott Co.*

*v. Caribbean Utilities Co.*, 513 F.2d 1176 (6th Cir.1975) stated at 1182:

> The purposeful action test of *Southern Machine* ... is not intended to require ... that to be subject to the personal jurisdiction of the courts of a state, a nonresident corporation must actively conduct an income-generating enterprise in that state. To the contrary, it is designed only "to insure that the defendant has become involved with the forum state through actions freely and intentionally done...." *In–Flight Devices Corp. v. Van Dusen Air, Inc.*, 466 F.2d 220, 228 (6th Cir.1972).

We believe the trial court correctly concluded that Perry had sufficient minimum contacts with Kentucky to satisfy due process requirements for personal jurisdiction.

▪ Next, we turn to Perry and Christine's second allegation that the trial court erred in granting default judgment. CR 55.02 provides that a court may set aside a default judgment in accordance with CR 60.02 for good cause shown. Factors to consider in deciding whether to set aside a judgment are: (1) valid excuse for default, (2) meritorious defense, and (3) absence of prejudice to the other party. 7 W. Bertelsman and K. Philipps, *Kentucky Practice*, CR 55.02, comment 2 (4th ed.1984) [hereinafter *"Ky.Prac."*].

Christine signed for the service of process of the lawsuit, but stated that she talked with her former attorney who, as Christine recalls, advised her that she did not think she had any assets. Based on this advice, Christine made no response to the summons. "Carelessness by a party or his attorney is not reason enough to set an entry aside." 7 *Ky.Prac.* CR 55.02, comment 2. Perry signed for the motion seeking to add him as a party to the original suit, and his housekeeper signed for the actual summons once he became a party. This was accomplished in July and in early September 1989. Perry states that he had no knowledge of the suit until he received the motion for default judgment on October 12, 1989. Furthermore, both Christine and Perry wrote letters in August agreeing to the private sale of the Robey residence. This should have put them on notice that should there not be enough money realized from the sale, the entire mortgage would not be satisfied and this might open them up for some liability.

We believe the parties did not exercise due diligence concerning this suit and answering the summons. Furthermore, the apparent defenses which might alter the outcome are also weak. Christine and her father both assert that Central Bank misrepresented the extent of the interest Robey was acquiring. Christine and Perry claim that they believed Robey was acquiring interests in two Louisville restaurants and a meat packing company in Lexington as well, for the $500,000. Central Bank merely wanted security for its loan to Robey and Christine. The bank was not concerned with whether Robey was acquiring an interest in one restaurant or three; its only concern was that the borrower be able to pay the loan, or in the alternative, that there be adequate security in the event of default.

It is true that courts do not favor default judgments and that it is preferable to decide cases on the merits. *Dressler v. Barlow*, Ky.App., 729 S.W.2d 464, 465 (1987). If it appeared that Christine and Perry had a truly meritorious defense, then on balance, whether the trial court should have set the judgment aside would be a close call. However, we believe the excuses for failing to answer are weak, as are the defenses, and we cannot say it was an error or abuse of discretion for the trial court either to grant the default judgment or to refuse to set it aside.

The judgment and order of the Fayette Circuit Court are affirmed.

All concur.