**PNC BANK, N.A., f/k/a PNC Bank of Northern Kentucky, N.A., Appellant,**

v.

**CITIZENS BANK OF NORTHERN KENTUCKY, INC.; James C. Bennett; Barbara S. Bennett; and Bexar, IV, LLC,[1] Appellees.**

No. 2002–CA–002500–MR.

Court of Appeals of Kentucky.

Dec. 19, 2003.

Discretionary Review Denied Aug. 18, 2004.

1. The notice of appeal lists this company's name as "Vexar". However, we note that the correct spelling of the company's name is "Bexar".

Brian E. Chapman, Cincinnati, OH, for appellant.

John E. Lange IV, Newport, KY, for appellee.

Before EMBERTON, Chief Judge; JOHNSON and KNOPF, Judges.

## OPINION

JOHNSON, Judge.

PNC Bank, N.A. has appealed from an order of the Campbell Circuit Court entered on October 30, 2002, which denied PNC Bank's motion to vacate the default judgment and order of sale entered against it on July 29, 2002. Having concluded that the trial court did not abuse its discretion in denying PNC Bank's motion to vacate, we affirm.

On March 26, 1993, James C. Bennett and his wife, Barbara S. Bennett, executed a promissory note in favor of "PNC Bank, Northern Kentucky, National Association" in the principal amount of $62,850.00. On the same day and in a separate instrument, the Bennetts mortgaged certain real property owned by them in Campbell County, Kentucky to "PNC Bank, Northern Kentucky, National Association," as security for the note. The mortgage was duly recorded in the Campbell County Clerk's office on April 1, 1993. On May 27, 1995, PNC Bank, Northern Kentucky, N.A. merged into PNC Bank, Ohio, N.A. On December 31, 1997, PNC Bank, Ohio, N.A. merged into PNC Bank, N.A., the appellant herein. PNC Bank has its national headquarters in Pittsburgh, Pennsylvania.

On June 27, 2001, Discovery Quality Engraving, Inc. executed a promissory note in favor of Citizens Bank of Campbell County, Inc., n/k/a Citizens Bank of Northern Kentucky, Inc. in the principal amount of $52,152.00. Barbara Bennett signed this note on behalf of Discovery. Both of the Bennetts also signed individual commercial guaranties to secure this note. In addition, the Bennetts executed a mortgage in favor of Citizens Bank on the same real property to which PNC Bank was also a mortgagee. This mortgage was duly recorded in the Campbell County Clerk's office on July 11, 2001.

On or around December 27, 2001, Discovery defaulted when it stopped making payments on the note executed in favor of Citizens Bank.[2] Approximately three months later, on or around March 15, 2002, the Bennetts filed for Chapter 7 Bankruptcy in the United States Bankruptcy Court for the Eastern District of Kentucky. On May 2, 2002, the Bankruptcy Court entered an order terminating the stay against Citizens Bank, which termination allowed Citizens Bank to pursue a foreclosure action on the Bennetts' mortgaged property.

In preparation for commencing the foreclosure action that is the subject of this

---

**2.** At some point, the Bennetts, in their individual capacities, refused to pay on the commer-cial guaranties signed approximately six months earlier.

appeal, Citizens Bank conducted a title examination and discovered the mortgage executed on March 26, 1993, in favor of "PNC Bank, Northern Kentucky, National Association." On May 31, 2002, Citizens Bank filed a complaint in Campbell Circuit Court seeking to foreclose on the mortgaged property. Both of the Bennetts, Discovery, and "PNC Bank of Northern Kentucky, N.A." were named as defendants in the complaint. Citizens Bank named "PNC Bank of Northern Kentucky, N.A." in the complaint pursuant to KRS[3] 426.006, which requires a party seeking to foreclose on property to name all other parties holding a lien on the same property.[4]

The court record shows that on June 4, 2002, a civil summons and a copy of Citizens Bank's complaint were served on Dorothy Sawicki, the branch manager of PNC Bank's main Northern Kentucky branch in Fort Mitchell, Kentucky. However, PNC Bank failed to file an answer within 20 days of the service of the complaint on Sawicki as required by CR[5] 12.01. Hence, on July 23, 2002, Citizens Bank filed a motion for a default judgment and order of sale against PNC Bank. On July 29, 2002, the trial court entered a default judgment against PNC Bank, declaring its lien on the property "null and void." The trial court also ordered the mortgaged property to be sold to satisfy the lien held by Citizens Bank. On August 29, 2002, the mortgaged property was sold by the Master Commissioner of the Campbell Circuit Court to Bexar, LLC, for $72,500.00.[6]

Approximately one month later, on September 25, 2002, PNC Bank filed a motion to vacate both the default judgment entered against it and the order of sale. On October 30, 2002, the trial court denied PNC Bank's motion, after finding that it had been properly served and that it was the proper party before the court when the default judgment against it was entered. This appeal followed.

■ PNC Bank has raised two claims of error in this appeal. First, PNC Bank claims that the trial court erred by finding that it had been properly served in accordance with CR 4.04(5). In particular, PNC argues that Sawicki, a local branch manager of PNC Bank, was not a "managing agent" within the meaning of CR 4.04(5).[7] Thus, PNC Bank argues that it was not given proper notice that Citizens Bank had commenced a foreclosure action and that PNC Bank had been named as a defendant in Citizens Bank's complaint. We disagree. The civil rules require that service on a corporation be made on a representative who is so integrated with

---

3. Kentucky Revised Statutes.

4. KRS 426.006 requires that "[t]he plaintiff in an action for enforcing a lien on property shall state in his petition the liens held thereon by others, making them defendants; and may ask for and obtain a judgment for a sale of the property to satisfy all of said liens which are shown to exist, though the defendants fail to assert their claims. Such defendants shall not, however, be allowed to withdraw or receive any of the proceeds of such sale, until they have shown their right thereto by answer and cross claim, which shall be asserted as provided in the Rules of Civil Procedure."

5. Kentucky Rules of Civil Procedure.

6. According to the record, Citizens Bank received $58,175.45 from the proceeds of the sale.

7. CR 4.04(5) states that "[s]ervice shall be made upon a corporation by serving an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf."

the corporation that it is reasonable to presume that the representative will know what to do with the legal papers served on him.[8] In *Red Bush Production Co. v. Hayes,*[9] the former Court of Appeals held that the service of a summons on the manager of a gas pumping facility in Johnson County, Kentucky, was sufficient service upon the company whose headquarters were in Ashland, Kentucky.[10] When asked what his duties were, the manager stated that he " 'look[ed] after the whole thing out there; pipe line, station—anything they say for me to do.' "[11]

The facts of the case *sub judice* present an analogous situation. PNC Bank has conceded that "Sawicki was charged with managing a local branch of PNC Bank, N.A." Hence, as was the case in *Red Bush Production Co.,* the service of the summons on Sawicki was sufficient service upon PNC Bank. It was reasonable to presume that Sawicki, a manager of one of PNC Bank's branches, would know what to do with a civil summons served upon her as bank manager. Accordingly, PNC Bank's argument that it was not properly served with notice of Citizens Bank's foreclosure action is without merit.

 Next, PNC Bank argues that the trial court erred by finding it was a proper party before the court. Specifically, PNC Bank argues:

> The trial court erred by refusing to recognize a distinction between two entirely separate legal entities, PNC Bank, N.A., and the now-defunct PNC Bank, Northern Kentucky, N.A. Citizens Bank's failure to properly name PNC Bank, N.A., as a party defendant in this action is reversible error, and the [j]udgment, [o]rder of [s]ale, and [s]ale must be set aside pursuant to [CR] 55.02 and 60.02(e).

According to PNC Bank, since PNC Bank, Northern Kentucky, N.A. had merged into PNC Bank, N.A. between the time of the execution of the Bennetts' first mortgage on March 26, 1993, and the filing of Citizens Bank's complaint on May 31, 2002, PNC Bank was not properly before the trial court. PNC Bank therefore argues that the default judgment and order of sale should have been set aside. Once again, we disagree with PNC Bank's argument.

 Although default judgments are not favored, a trial court is vested with broad discretion when considering motions to set them aside, and an appellate court will not overturn the trial court's decision absent a showing that the trial court abused its discretion.[12] A party seeking to

---

8. 6 Philipps, *Kentucky Practice,* Rules of Civil Procedure Annotated, p. 43 (1995). *See also Montclair Electronics, Inc. v. Electra/Midland Corp.,* 326 F.Supp. 839, 842 (D.C.N.Y.1971) (discussing the federal counterpart to CR 4.04(5) and stating "[t]he primary purpose of the federal process rule is to provide the defendant with notice that an action has been filed against it. Service therefore 'should be made upon a representative so integrated with the organization that he will know what to do with the papers. Generally, service is sufficient when made upon an individual who stands in such a position as to render it fair, reasonable and just to imply the authority on his part to receive service' ")(quoting *Ameri-*

can *Football League v. National Football League,* 27 F.R.D. 264, 269 (D.Md.1961)).

9. 277 Ky. 284, 126 S.W.2d 453 (1939).

10. *Id.* at 454–55.

11. *Id.* at 455.

12. *Howard v. Fountain,* Ky.App., 749 S.W.2d 690, 692 (1988)(holding that "[a]lthough default judgments are not favored, trial courts possess broad discretion in considering motions to set them aside and [appellate courts] will not disturb the exercise of that discretion absent abuse").

have a default judgment set aside must show good cause; *i.e.,* the moving party must show "(1) a valid excuse for the default; (2) a meritorious defense to the claim; and (3) absence of prejudice to the non-defaulting party." [13] In the case *sub judice,* we conclude that the trial court did not abuse its discretion in denying PNC Banks motion to set aside the default judgment entered against it.

In *Carnation Co. v. Devore,* [14] the former Court of Appeals stated:

> [A] mere misnomer of a corporation defendant in words and syllables is immaterial, and a judgment in the action will bind it if it is duly served with process or appears and does not plead the misnomer in abatement or file a plea of nul tiel corporation, or raises the objection by answer. The objection cannot be raised under the general issue. It is too late to plead misnomer of defendant corporation after the cause has been referred, after defendant makes default, or after judgment. [15]

In the case at bar, although Citizens Bank referred to PNC Bank in its complaint as PNC Bank of Northern Kentucky, N.A. instead of PNC Bank, N.A., this minor error is insufficient grounds for PNC Bank to avoid being bound by the default judgment. As we discussed previously, PNC Bank was properly served in accordance with CR 4.04(5). Therefore, it was on notice that Citizens Bank had commenced a foreclosure action on the property in question. Since this technical misnomer does not constitute a valid excuse, PNC Bank has failed to show good cause in support of its argument that the default judgment should have been set aside. Accordingly, we find no abuse of discretion by the trial court in denying PNC Banks motion to vacate the default judgment and order of sale.

Based on the foregoing, the order of the Campbell Circuit Court is affirmed.

ALL CONCUR.

---

13. *Sunrise Turquoise, Inc. v. Chemical Design Co., Inc.,* Ky.App., 899 S.W.2d 856, 859 (1995).

14. Ky., 252 S.W.2d 860, 862 (1952)(quoting 19 C.J.S. *Corporations* § 1328(c)).

15. *See also* 62B Am.Jur.2d *Process* § 85 (2003) (stating that "if the defendant has been actually served with the summons in an action, a default judgment against him is valid although in the summons he is misnamed").