RENDERED: AUGUST 19, 2022; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2021-CA-1212-MR

SNR RAILOPS LLC                                                      APPELLANT


APPEAL FROM FLOYD CIRCUIT COURT
v.        HONORABLE THOMAS M. SMITH, JUDGE
ACTION NO. 20-CI-00341


DYING EMBER COAL
COMPANY LLC                                                         APPELLEE


OPINION
VACATING AND REMANDING

** ** ** ** **

BEFORE: CLAYTON, CHIEF JUDGE; CETRULO AND K. THOMPSON, JUDGES.

CLAYTON, CHIEF JUDGE: SNR RailOps LLC ("SNR") appeals from a default judgment granted by the Floyd Circuit Court to Dying Ember Coal Company LLC ("Dying Ember"). Upon review, we conclude that the trial court abused its discretion in denying SNR's motion to set aside the default judgment. We vacate the default judgment and remand the case for further proceedings.

SNR is a Kentucky limited liability company organized by Ray Younan, a native of Australia. On November 28, 2018, SNR entered into a contract to purchase coal from Dying Ember, a Kentucky limited liability company which mines and sells coal. Between October 12, 2019, and December 3, 2019, Dying Ember made four coal deliveries totaling $358,789.27 to SNR's Ivel Preparation Plant. The amount and cost of the shipments was confirmed in a series of Statements issued by SNR's agent, Stella Natural Resources. Under the terms of the contract, payment was "to be made in full Friday week following shipments." According to the affidavit of John Honeycutt, the president of Dying Ember, SNR did not pay for the shipments.

Dying Ember filed a complaint against SNR and Younan on June 1, 2020, alleging nonpayment and claiming breach of contract, unjust enrichment, and conversion. The complaint sought to recover the amount of the debt, pre- and post-judgment interest, and attorney's fees. The complaint was accompanied by initial discovery requests including first interrogatories, as well as requests for production of documents and admissions. At the time the suit was filed, the Secretary of State listed SNR's agent for service of process as

Stella Natural Resources Inc.
15992 U.S. Route 23
Catlettsburg, KY 41129

The Floyd Circuit Clerk attempted to serve Stella Natural Resources Inc. at this address. On June 29, 2020, the certified mail was returned, stamped "Returned Unserved 6-29-20 Vacant. Unable to Forward."

Dying Ember attempted service of the summons and complaint on Business Filing Incorporated, the registered agent of Stella Natural Resources Inc. Susan Johnson at Business Filing Incorporated acknowledged service and the undated return card was filed by the Floyd Circuit Clerk on August 10, 2020.

Dying Ember also employed a warning order attorney to effect service. He filed his report on January 28, 2021, stating that he had mailed letters to SNR RailOps, LLC, attention Stella Natural Resources, at 15992 U.S. Route 23, Catlettsburg, Kentucky 41129 and to Ray Younan at an address in Australia. He opined that SNR and Younan had been notified of the nature and pendency of the action.

Dying Ember additionally served the Secretary of State as the statutory agent of SNR pursuant to Kentucky Revised Statutes ("KRS") 454.210(3). The Secretary of State acknowledged service on February 13, 2021.

SNR did not file an answer to the complaint or respond in any other way. On March 16, 2021, Dying Ember filed a motion for default judgment against SNR.[1]

Meanwhile, SNR retained an attorney, Matthew R. Lindblom, to defend it in the action. According to Lindblom, he learned of Dying Ember's action through a search of CourtNet prior to March 16, 2021, and SNR retained him thereafter. Lindblom contacted Dying Ember's attorney on March 16, 2021, prior to the filing of the motion for default judgment, to inform him that he was representing SNR. He told Dying Ember's attorney that the service attempts to date had been ineffective and sought an agreement on a deadline to file an answer to the complaint. Lindblom also requested copies of any other papers filed or served in the case to date. Dying Ember's attorney denied the request and informed Lindblom that he was finalizing a motion for default judgment. He later stated that he told Lindblom that "unfortunately no cooperation could be expected other than allowed by the Civil Rules." He explained that his orders "were not to cooperate . . . for anything. And, I told Mr. Lindblom I was not able to do that."

Lindblom obtained a copy of the motion for default judgment from the court clerk's office after checking CourtNet to confirm it had been filed. On

---

[1] The motion did not request relief against Younan, stating that service on him may have been lacking at that time.

March 25, 2021, Lindblom filed an objection on behalf of SNR to the first motion for default judgment. The objection explained that Lindblom had been recently retained to represent SNR in the action and that SNR intended to file an answer to complaint. It stated that SNR's management team, which had been recently replaced, was reviewing records relating to SNR's relationship to Dying Ember and would require discovery to respond fully to Dying Ember's allegations. It described the telephone conversation with Dying Ember's attorney and informed the court that Dying Ember had not withdrawn the motion for default judgment even though it knew that SNR intended to respond to the complaint. The objection challenged the validity of the service on SNR and argued that Dying Ember would not be prejudiced by the denial of its motion. It stated that it did not have a copy of the discovery requests and that Dying Ember refused to provide them. SNR's objection did not expressly state that it was entering a special appearance solely to challenge service.

The circuit court conducted a hearing, took the motion under submission, and ordered the parties to participate in mediation within forty-five days. The parties complied but the mediation was unsuccessful. The mediator filed his report to the circuit court on June 2, 2021.

Dying Ember then issued a new summons, complaint, and discovery to SNR pursuant to KRS 14A.4-040(2), by serving SNR at its principal office

address at 170 C&O Road, Ivel Coal Plant, Ivel, Kentucky, 41642, to the attention of David Stone, the President of SNR. Dying Ember did not serve the new summons on Lindblom or alert him of this new attempt at service. Dying Ember's counsel explained that he did not do so because Lindblom "had not indicated to me that he was empowered to accept service." Dying Ember also filed a motion for renewed default judgment.

SNR filed an objection to the second motion for default judgment, noting that Dying Ember had not tried to notify SNR's counsel that it was attempting service for a second time. It also claimed that it had not yet filed an answer to the complaint because it was waiting for the trial court to rule on the first motion for default judgment that was still pending and ripe for ruling following the failed mediation. SNR also filed an answer.

Following a hearing, the trial court entered a default judgment and awarded Dying Ember judgment in the amount of $358,789.27 plus interest. The court accepted the assumption of service in accordance with KRS 14A.4-040 and found that Dying Ember had stated its debt adequately and fully by affidavit and documents. It further found that SNR had failed to counter that proof with any testimony, affidavits, or documents.

SNR filed a motion to reconsider and set aside entry of default judgment, arguing that service had still not been completed when SNR filed its

answer and that SNR had meritorious defenses to Dying Ember's claims. It also

contended that good cause existed under Kentucky Rules of Civil Procedure (CR)

55.02 to set aside the default judgment, because SNR had provided a valid excuse

for the alleged default; had demonstrated a meritorious defense; and showed that

Dying Ember would not be prejudiced by setting aside the default judgment. SNR

also filed a motion under CR 6.02 to enlarge the period for filing its answer should

the trial court deem service to have been completed. Dying Ember filed a

response. Following a hearing, the trial court entered another default judgment

virtually identical to the earlier one but including language to make it "final and

appealable." It also entered an order denying SNR's motion to set aside and its

motion for an enlargement of time. This appeal by SNR followed.

A party may request default judgment when "a party against whom a

judgment for affirmative relief is sought has failed to plead or otherwise defend[.]"

CR 55.01. "[D]efault judgments are not looked upon with favor as it is the policy

of the law to have every case decided on its merits." *Dressler v. Barlow*, 729

S.W.2d 464, 465 (Ky. App. 1987). "Since every cause of action should be tried

upon the merits, the rendering of judgments by default ought to be withheld where

seasonable objection is made unless a persuasive reason to the contrary is

submitted." *Childress v. Childress*, 335 S.W.2d 351, 354 (Ky. 1960).

When a default judgment has been entered, it may for "good cause" be set aside in accordance with CR 60.02. CR 55.02. To show good cause, a party must provide "(1) a valid excuse for the default; (2) a meritorious defense to the claim; and (3) absence of prejudice to the non-defaulting party." *Statewide Environmental Services, Inc. v. Fifth Third Bank*, 352 S.W.3d 927, 930-31 (Ky. App. 2011) (citations omitted).

"Although default judgments are not favored, a trial court is vested with broad discretion when considering motions to set them aside, and an appellate court will not overturn the trial court's decision absent a showing that the trial court abused its discretion." *PNC Bank, N.A. v. Citizens Bank of Northern Kentucky, Inc.*, 139 S.W.3d 527, 530 (Ky. App. 2003). The test for abuse of discretion is whether the trial court's decision was "arbitrary, unreasonable, unfair or unsupported by sound legal principles." *First Horizon Home Loan Corp. v. Barbanel*, 290 S.W.3d 686, 688 (Ky. App. 2009).

Under the standards established in our case law, the decision to grant a default judgment may be held to be an abuse of discretion when the defendant has made a timely objection to its entry. In *Childress v. Childress*, for example, the defendant failed to timely answer or appear against the complaint. 335 S.W.2d at 352. His attorney thereafter filed an untimely motion for leave to answer and defend. The trial court denied the motion and entered default judgment. The

judgment was reversed on appeal, with the court stating: "Since every cause of action should be tried upon the merits, the rendering of judgments by default ought to be withheld where seasonable objection is made unless a persuasive reason to the contrary is submitted." *Id.* at 354.

Similarly, in *Dressler v. Barlow*, the plaintiff filed a motion for default judgment against the defendant, who claimed she was never served the summons and complaint. 729 S.W.2d at 464-65. The defendant's attorney discovered, by chance, that the motion for default judgment had been filed and claimed neither he nor his client had received any notice of it. He went before the court to object and requested leave to file a memorandum in opposition to the motion. The trial court granted leave, and the attorney filed a memorandum containing numerous meritorious defenses to the complaint and counterclaim. The trial court nonetheless granted default judgment to the plaintiff. It was the opinion of the appellate court that "it was an abuse of discretion for the trial court to grant default judgment in favor of appellee, after having given appellant leave to show cause why that judgment should not be reached, and defendant responded by producing *prima facie* defenses and counterclaims." *Id*. at 465.

SNR asserts that it only received actual notice of the action filed by Dying Ember on the same day Dying Ember filed its motion for default judgment. It filed an objection nine days after receiving notice. The situation is unlike that in

*First Horizon v. Barbanel*, an opinion affirming a grant of default judgment, in which the defendants alleged improper service of the complaint but admitted they had actual notice at least 22 days before the motion for default was filed. 260 S.W.3d at 689. The trial court held a hearing on the motion for default judgment and SNR's objection, assuming jurisdiction over the parties insofar as it ordered them to participate in mediation and informed them it was taking the matter under submission. While the parties were awaiting a ruling on the motion and objection pending before the court, Dying Ember proceeded to file a new summons, complaint, and discovery requests without informing SNR's counsel. SNR filed another objection and an answer. The trial court nonetheless entered a default judgment in favor of Dying Ember, finding that service was complete in this second instance, and subsequently denied SNR's motion to set aside the default judgment.

SNR had sought to head off entry of the default judgment by filing a seasonable objection and appearing before the court. *Dressler*, 729 S.W.2d at 465. Under *Childress* and *Dressler*, the trial court's grant of default judgment was an abuse of discretion.

Because the granting of default judgment was an abuse of discretion, it follows that the order denying the motion to set aside the default judgment "must

fall of its own weight." *Id.* at 466. We offer no opinion on the issue of service of process.

The default judgment is hereby vacated, and the matter is remanded for further proceedings.

CETRULO, JUDGE, CONCURS.

THOMPSON, K., JUDGE, DISSENTS AND FILES SEPARATE OPINION.

THOMPSON, K., JUDGE: Respectfully, I dissent. I believe the Floyd Circuit Court's judgment should be affirmed as: (1) Dying Ember properly provided proof that it had the right to collect on an established debt (as Dying Ember repeatedly delivered coal to SNR, SNR confirmed receipt of each load of coal and the payment due, and SNR failed to pay); (2) Dying Ember properly served SNR; and (3) SNR failed to establish good cause for the default judgment to be set aside (SNR failed to establish that it had a valid excuse for failing to timely answer, a meritorious defense to the claimed debt, and the absence of prejudice to Dying Ember). I believe the circuit court acted appropriately within its discretion in granting a default judgment against SNR in favor of Dying Ember and declining to set it aside. I would affirm.

As the majority opinion has detailed, Dying Ember was compelled to attempt service on SNR five different ways over the course of more than a year, including through a warning order attorney and the Secretary of State. These

-11-

extreme measures were necessitated because SNR violated KRS 271B.5-010, which states that "[e]ach corporation shall continuously maintain in this Commonwealth a registered office and a registered agent that comply with KRS 14A.4-010."

The circuit court specifically found in granting the renewed motion for default judgment that the fifth service attempt was effective, serving SNR at its principal office through KRS 14A.4-040(2). KRS 14A.4-040(1) provides for service on an entity's registered agent, or under KRS 14A.4-040(2) if it has no registered agent or that agent cannot be served with reasonable diligence that the entity "may be served by registered or certified mail, return receipt requested, addressed to the entity or foreign entity at its principal office and to the attention of the person or office appropriate for giving notice to the entity or foreign entity." I am confident that the circuit court was correct in determining that SNR was properly served in accordance with KRS 14A.4-040(2) as the evidence associated with the first attempt at service demonstrated that SNR lacked a proper registered agent at the address given for service to the Secretary of State, necessitating that other means be employed to serve it.

However, that does not mean that some of the earlier attempts to serve SNR may not have been effective as well. KRS 14A.4-040(3) states "[t]his section does not prescribe the only means, or necessarily the required means, of serving an

-12-

entity or foreign entity." CR 4.04(5) provides: "Service shall be made upon a corporation by serving an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf." *See PNC Bank, N.A. v. Citizens Bank of Northern Kentucky, Inc.*, 139 S.W.3d 527, 529-30 (Ky. App. 2003) (footnote omitted) (concluding service on a local branch manager of a bank was effective). Service through the warning order attorney or Secretary of State may have been proper if they complied with KRS 14A.4-040(2) or CR 4.04(5).

I agree with both Dying Ember and the circuit court that SNR has failed to demonstrate any good cause to set aside the properly entered default judgment against it. As the majority correctly states, to show good cause, a party must provide "(1) a valid excuse for the default; (2) a meritorious defense to the claim; and (3) absence of prejudice to the non-defaulting party." *Statewide Environmental Services, Inc. v. Fifth Third Bank*, 352 S.W.3d 927, 930-31 (Ky. App. 2011). It appears that this test was first adopted in Kentucky in *Perry v. Central Bank and Trust Company*, 812 S.W.2d 166, 170 (Ky.App. 1991), which relied on 7 W. BERTELSMAN AND K. PHILIPPS, *Kentucky Practice*, CR 55.02, comment 2 (4th ed. 1984).

However, the majority Opinion then declines to apply this test. Instead, the majority relies on *Childress v. Childress*, 335 S.W.2d 351 (Ky. 1960)

-13-

and *Dressler v. Barlow*, 729 S.W.2d 464 (Ky.App. 1987), cases that predate this test, to affirm. Because these cases predate this test, they have limited precedential value and I disagree that reversal is warranted based on them.

As for *Childress*, besides predating this test, it is distinguishable considering the facts and the Court's reasoning. *Childress* was a divorce case in which the husband who failed to answer was illiterate, with the wife claiming the husband had waived any right in property which belonged to her by signing a written property settlement in exchange for $500. While the husband did not answer in time, when he did retain an attorney the husband requested to be allowed to answer, and filed an affidavit that explained that he did not know what he was signing, his wife acted to defraud him and explained that the property belonged to him solely or jointly with the wife (as some property was derived from his daughter and other property was acquired by both their efforts during the marriage). The husband's request to be allowed to answer occurred before any other action in the case, besides the wife taking noticed depositions, had occurred.

The Court emphasized that it would treat this matter differently "[b]ecause of public concern" in "divorce proceedings[,]" noting "[d]efault judgments in divorce cases are not looked upon with favor even in regard to property rights." *Childress*, 335 S.W.2d at 353-54. The Court also emphasized that "[i]n the present case, the delinquent defendant had sought to head off the

-14-

entry of the default judgment by his motion [to be allowed to file an answer which was filed before the court made its judgment approving the property settlement]. That fact is a significant and important consideration." *Id.* at 354. The Court also emphasized "the husband in this case made a prima facie showing that the release[] he signed may be unfair and he may have been taken advantage of." *Id.*

I am also not convinced that *Dressler*, 729 S.W.2d 464, requires a different result. *Dressler* essentially sought to separate certain broad pronouncements in *Childress* from the specifics involved in that case; I do not agree that *Childress* should be interpreted as it was in *Dressler*. However, even *Dressler* is distinguishable as the case involved private individuals and a suit involving a land contract, and that case did not have the protracted history here of a party having actual notice and in fact participating in the suit prior to service it deemed adequate and then making no timely response after conclusively adequate service. Our Courts routinely distinguish *Dressler* with little comment. *See, e.g.*, *First Horizon Home Loan Corp. v. Barbanel*, 290 S.W.3d 686 (Ky.App. 2009); *Perry*, 812 S.W.2d 166.

Additionally, while the same result might have occurred in *Childress* had the test been employed there, I am far from certain that the same result would have occurred in *Dressler*, as the Court specifically rejected the defendant's excuse for not answering, that she did not recall being served, and that she did not receive

notice of the motion for default, noting that service by the sheriff was conclusive and no service of the motion for default was required where she had not appeared in the case. *Dressler*, 729 S.W.2d at 465. This appears to show that the defendant did not have a valid excuse for the default. While, regarding the second part of the test, the Court referenced the fact that the defendant in responding raised *prima facie* defenses and counterclaims, there was no judgment on whether these appeared to be meritorious. *Id.* There was also no consideration as to whether there was an absence of prejudice to the non-defaulting party.

      *Barbanel*, 290 S.W3d 686, a more recent case which the majority Opinion rejects, is *apropos* as it involves a default by a corporation; it provides guidance helpful to a resolution here. In *Barbanel*, the Court affirmed the denial of a motion to set aside a default against two banks. The Court found significant that despite First Horizon's complaining that it did not receive appropriate notice of the complaint as it was served through the Secretary of State rather than its registered agent, the fact that the bank admitted to having actual notice at least twenty-two days before the motion for default was filed (as it submitted a motion for an extension of time to file its response and then let the extension period lapse). 290 S.W.3d at 689. The Court emphasized that carelessness in handling a complaint is not good cause for setting aside a default. *Id.*

Although the majority Opinion quotes the test for good cause, it avoids applying it, even declining to offer an opinion on whether the service of process was effective. In doing so, I believe the majority Opinion does not properly review this case. Applying the test is required and the issue of whether the fifth attempt at service was appropriate is integral to the issue of whether there was a valid excuse for the default. I would affirm the circuit court's factual finding that the service at SNR's principal place of business was effective and apply the test for good cause to conclude that the circuit court did not err in failing to set aside the default judgment as none of the three factors were satisfied.

SNR did not raise any valid excuse for the default as it has not provided a valid basis for failing to file a timely answer. SNR had actual notice of the complaint as of March 16, 2021, if not sooner, and has admitted as much.[2] In opposing the first default motion, SNR stated a desire to file an answer and investigate Dying Ember's claims but failed to request the opportunity to file a belated answer at that time. While this may be excused if the first four attempts at service were defective, SNR still knew there was a pending suit and should have understood that its timely answer would be required upon proper service.

---

[2] It strains all credibility to believe that SNR had no notice of the pending lawsuit but just happened to employ counsel who just happened to search for pending actions against it on CourtNet and it only received notice that way. While I do not opine on the effectiveness of service attempts one through four, I suspect that SNR received notice of the pending lawsuit through them prior to this time.

-17-

Certainly, by the time SNR was properly served on June 2, 2021, it should have been prepared to file an answer within twenty days of service being deemed effective, or at least request an enlargement of time to answer before its answer was due, rather than taking no action at all. SNR had far more than the twenty-two days of notice deemed sufficient in *Barbanel*, even if its answer was not due at the onset. SNR has no excuse for waiting until after the second motion for default was filed to file an answer.

Additionally, SNR's excuses for not timely answering are specious. While SNR complained of ineffective service earlier and argues that it was improper for Dying Ember to serve it at its principal business address rather than being served through counsel, it cannot establish any requirement that it be served in such a manner. Indeed, given SNR's history of deeming service ineffective, I believe it is highly probable that had SNR been served through its counsel rather than at its principal place of business, it would dispute that such service was effective where it never waived statutory service or consented to such. Dying Ember acted appropriately in serving SNR pursuant to KRS 14A.4-010(2) after SNR complained it had not been properly served. SNR had counsel and should have anticipated that its complaint of improper service would result in another attempt to serve it in a manner permitted by statute.

Unlike the illiterate husband in *Childress*, SNR is an LLC who by its own admission is run by a management team. A management team should be capable of understanding that any process should be brought to its counsel's attention so that it can be properly addressed in a timely manner.

Additionally, SNR's untimely answer was problematic as it was not verified, did not challenge this latest service of process by raising ineffective service as an affirmative defense, was not accompanied by any affidavits or any other proof disputing the merits or the effectiveness of this latest service of process, and it was also not accompanied by a motion for enlargement of time. Compare with *Childress* in which the defendant sought permission to file an untimely answer prior to any motion for default being filed. As there is no valid excuse for SNR's failure to file a timely answer, the default was proper and need not be set aside.

While the failure to satisfy the first factor requires us to affirm, I am also confident that SNR did not satisfy factors two or three, either. SNR has not presented any proof of a meritorious defense despite having months to do so between when it first began participating in the case after the first motion for default was filed and when the second motion for default was filed, as part of its response to this second motion, or when it asked that the default be set aside. Unlike in *Childress*, SNR did not file any affidavits or other proof to establish

-19-

fraud or another meritorious defense. SNR has only vaguely argued in its answer that:

> [U]pon information and belief it or one or more of its
> affiliates has had a business relationship with the Plaintiff
> in the past but current management for SNR does not
> currently have complete information regarding the extent
> of that relationship. Accordingly, and based on the
> allegations in the Complaint and the documents attached
> to the Complaint, SNR denies the allegation that Plaintiff
> sold coal to SNR and SNR refused to pay.

The answer is odd, as SNR had three months to investigate the relationship and what occurred but seems to know nothing further than it did at that time. Instead, below in opposing the motions for default judgment, SNR made vague allegations through counsel as to unfair dealings which it apparently cannot substantiate.

Finally, SNR has failed to show a lack of prejudice to Dying Ember if the default were to be set aside. I note that there was specific discussion during a hearing before the circuit court that many claimants are seeking payment from SNR and delay may deny Dying Ember any recovery, with the majority's reversal and directions essentially putting Dying Ember at the back of the line.

When "the excuses for failing to answer are weak, as are the defenses . . . we cannot say [and should not say] it was an error or abuse of discretion for the trial court either to grant the default judgment or to refuse to set it aside." *Perry*, 812 S.W.2d at 170. This matter needs to be finally concluded and Dying Ember needs to be paid for the coal it delivered to SNR.

Accordingly, I dissent.


BRIEFS FOR APPELLANT:              BRIEF FOR APPELLEE:

Matthew R. Lindblom               Calvin R. Tackett
Louisville, Kentucky              Whitesburg, Kentucky