RENDERED: JUNE 2, 2023; 10:00 A.M.
NOT TO BE PUBLISHED

# Commonwealth of Kentucky

# Court of Appeals

NO. 2022-CA-0027-MR

O'REILLY AUTOMOTIVE SALES,
INC. D/B/A O'REILLY AUTO PARTS                                    APPELLANT

|           | APPEAL FROM WHITLEY CIRCUIT COURT |
|-----------|-----------------------------------|
| v.        | HONORABLE DANIEL BALLOU, JUDGE    |
|           | ACTION NO. 21-CI-00331            |

SHARON LEACH D/B/A TOMMY'S
TOWING; AND CUMMINS ENGINE
COMPANY, INC. D/B/A CUMMINS
SALES AND SERVICES                                                APPELLEES

OPINION
AFFIRMING IN PART, VACATING IN PART, AND REMANDING

** ** ** ** **

BEFORE: EASTON, JONES, AND LAMBERT, JUDGES.

LAMBERT, JUDGE: O'Reilly Automotive Sales, Inc., d/b/a O'Reilly Auto Parts

("O'Reilly"), appeals from the Whitley Circuit Court's denial of its motion to

vacate a default judgment in favor of Sharon Leach, d/b/a Tommy's Towing

("Leach"). We affirm the denial of the motion to set aside the default but vacate and remand the monetary award portion of the judgment.

We need not delve deeply into the underlying facts to resolve the limited issues before us. Leach filed an action in the Whitley Circuit Court against O'Reilly and Cummins Engine Company, Inc., d/b/a Cummins Sales and Service ("Cummins"), over the sale and installation of allegedly defective replacement engine parts for Leach's tow truck. The complaint contains various claims under Kentucky's version of the Uniform Commercial Code ("UCC"). Leach sought compensatory damages of $6,250, 12% pre- and post-judgment interest, and attorney fees.

As extraterritorial entities, O'Reilly and Cummins each were served via their Kentucky agent for service of process. The certified mail return receipt cards in the record are confusing, as discussed in the briefs, but it is uncontested that O'Reilly was properly served via its agent yet did not file an answer within the twenty days allotted for it to do so under Kentucky Rule of Civil Procedure ("CR") 12.01. Leach then sought a default judgment against O'Reilly.

Leach's motion for default judgment asked for just under $7,400 in compensatory damages (over $1,100 more than the amount mentioned in the complaint), over $200 in filing fees and related costs, $1,950 in attorney fees, and 12% interest. The trial court granted the motion and, without holding a hearing,

ordered O'Reilly to pay everything Leach requested. O'Reilly then filed a terse motion to set aside the default judgment under CR 55.02. That motion was submitted by O'Reilly's corporate counsel, whose attached affidavit provides: "[d]ue to an internal miscommunication the paralegal assigned to this case overlooked the paperwork . . . and I was not informed of this lawsuit until the date of this Affidavit."[1]

The trial court had not ruled on that motion when, about a month later, O'Reilly filed another motion to set aside the default. That second motion cited both CR 55.02 and 60.02. O'Reilly repeated its prior statement regarding a miscommunication within its legal department. O'Reilly argued the legal interest rate was 6%, not 12%, and Leach was not entitled to attorney fees. The trial court declined to set aside the default. After the trial court later denied its motion to alter, amend, or vacate that decision, O'Reilly filed this appeal.

Default judgments are disfavored in Kentucky. *See, e.g.*, *Ryan v. Collins*, 481 S.W.2d 85, 89 (Ky. 1972). "[N]evertheless, the granting of relief from a default judgment is a discretionary matter with the trial court." *Id.* According to our Supreme Court, "[o]ur case law makes clear that a party seeking to set aside a default judgment must show both good cause and a meritorious

---

[1] O'Reilly's corporate counsel was from Missouri and there is no indication he is licensed to practice in Kentucky. To resolve the issues before us, we need not examine Leach's argument that the motion was improper because it was not filed via an attorney licensed in Kentucky.

defense." *VerraLab Ja LLC v. Cemerlic*, 584 S.W.3d 284, 288 (Ky. 2019). We must "respect" a trial court's exercise of discretion regarding a default judgment "absent some flagrant miscarriage of justice . . . ." *Id.* at 287 (internal quotation marks and citation omitted).

O'Reilly argues the alleged mix-up in its corporate offices which caused its corporate counsel to not be made aware of Leach's complaint in time to respond is good cause. We disagree.

Our Supreme Court has stressed that "[i]nattention does not equate to good cause . . . ." *Id.* at 288. O'Reilly's sole stated reason for not filing an answer is that a paralegal "overlooked the paperwork" submitted by O'Reilly's agent for service of process. Overlooking a properly served complaint is inattention, and inattention is not good cause to set aside a default.

In short, O'Reilly's failure to respond to the complaint is directly and solely attributable to the inattention of its own agents and/or employees. *See, e.g.*, *Metropolitan Life Ins. Co. v. Ditto*, 207 Ky. 434, 269 S.W. 527, 528 (1925) ("The company will not be heard to rely upon the ignorance of its own agent, for it alone selected him; nor can it rely upon his negligence, for his negligence was its own negligence."); *Byron v. Evans*, 263 Ky. 49, 91 S.W.2d 548, 550 (1936) (holding that "a party is charged with the neglect of his attorney, and the law demands the exercise of due diligence by both in the prosecution or defense of litigation").

O'Reilly's reliance on cases such as *Educator and Executive Insurers, Inc. v. Moore*, 505 S.W.2d 176 (Ky. 1974), is misplaced as they involve delay caused by a third party, such as the postal service. Indeed, Kentucky's then-highest court specifically held in *Moore* that the delay in filing an answer "was not the fault of the appellant." *Id.* at 177.

Routine neglect or carelessness, such as that presented by O'Reilly, is insufficient to constitute good cause to set aside a default. *VerraLab Ja LLC*, 584 S.W.3d at 287 (holding that, to show good cause, a party must prove "it is not guilty of unreasonable delay or neglect") (internal quotation marks and citations omitted). The inattention or carelessness of the parties or those who receive service of process for them, including attorneys and their staff, is not excusable neglect. *Perry v. Central Bank & Trust*, 812 S.W.2d 166, 170 (Ky. App. 1991); *Bennche, Inc. v. Silver Creek Transport, LLC*, 650 S.W.3d 312, 318 (Ky. App. 2022).

Because O'Reilly has not shown good cause, there is no flagrant miscarriage of justice stemming from the trial court's denial of the motion to set aside the default judgment, and we thus do not need to examine whether O'Reilly has shown a meritorious defense. Instead, we merely note that under notice pleading, CR 8.01(1), Leach's complaint states a claim for breach of warranty sufficient to uphold a default judgment on liability. *See, e.g.*, *Crowder v. American*

*Mut. Liability Ins. Co.*, 379 S.W.2d 236, 238 (Ky. 1964) ("It is true that a default judgment may not be based on a complaint which completely fails to state a cause of action, but it is also true that much leniency is shown in construing such a complaint; it need not possess the qualities of immunity to . . . attack under CR 12.02 . . . .").

However, we cannot affirm the specific monetary award to Leach. "Notwithstanding that a default judgment has been entered, the law still requires a legal basis to support a damages claim, and the record in this case fails to support the damage award." *Deskins v. Estep*, 314 S.W.3d 300, 304 (Ky. App. 2010).

In her complaint, Leach pled a specific amount for the damages of $6,250. Our rules of pleading generally allow a claim for a liquidated amount. CR 8.01(2). The rule governing default judgments requires a hearing only "if" the amount of the damages is unliquidated, and it is then necessary to determine damages from evidence at a hearing. CR 55.01; CR 54.03(1). For example, it likely would not be erroneous for a circuit court to rely upon an affidavit confirming a liquidated amount and related amounts easily determined by calculation (*e.g.*, percentage attorney's fee, contractual interest) from information in a complaint. This is a frequent practice in mortgage foreclosure actions.

The problem here, however, is that the amount of the damages awarded was based upon different numbers offered in the motion for default

judgment as compared to the amount in Leach's complaint. The motion sought additional types of damages such as mechanic fees and a specific amount for attorney fees. In these circumstances, notice should have been given to O'Reilly for a damages hearing. *See, e.g.*, *Deskins*, 314 S.W.3d at 304-05. The trial court's failure to set the matter for a damages hearing requires vacating the amounts awarded in the default judgment.

As the trial court has not yet held an evidentiary hearing on damages, we cannot yet know precisely what amount of money Leach should properly receive. However, we briefly note two glaring issues which must be addressed on remand. First, the trial court ordered O'Reilly to pay attorney fees to Leach. Though strangely not cited by either party, longstanding precedent holds that attorney fees are generally not recoverable for cases brought under Kentucky's version of the UCC. *Nick's Auto Sales, Inc. v. Radcliff Auto Sales, Inc.*, 591 S.W.2d 709, 710-11 (Ky. App. 1979). The trial court's decision to award attorney fees to Leach directly contravenes that precedent, and the court did not provide a sufficient explanation about how, and why, doing so was appropriate.

Even if Leach somehow is nonetheless entitled to attorney fees, some of the specific attorney fees she sought to recover from O'Reilly are manifestly improper. The time sheet submitted by Leach's counsel plainly shows that some of the $1,950 in attorney fees sought by Leach represent time her counsel spent

***solely*** on the claims against Cummins. Leach's counsel's affidavit seemingly lists all of the time counsel spent working on this case to arrive at the $1,950 total amount. But that timesheet lists time Leach's counsel spent: 1) exchanging emails with Cummins' counsel on unspecified days between July 19 and August 8, 2021; 2) scanning and emailing some unspecified document(s) to Cummins' counsel on July 30, 2021; and 3) reviewing Cummins' answer on August 16, 2021. It is facially improper to require O'Reilly to pay attorney fees to Leach for time her counsel spent exclusively furthering her claims against Cummins.

On remand, after conducting a hearing, the trial court must determine anew if Leach is entitled to any attorney fees in light of *Nick's Auto Sales, Inc.*, *supra*. If the court again determines it is proper to award attorney fees to Leach, the court must explain its rationale and make sure that the award is reasonable. A reasonable award cannot include time Leach's counsel spent exclusively furthering Leach's claims against Cummins. *See, e.g.*, *Key v. Mariner Finance, LLC*, 617 S.W.3d 819, 824 (Ky. App. 2020) ("To determine the reasonableness of an attorney's fee, the court may consider various factors, including: the time and labor required, the difficulty of the questions involved, the skill required to perform the legal service, the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer, the customary fee charged for a similar service, the amount involved in the case, the time limitations,

the length of the professional relationship with the client, the experience and reputation of the lawyer, and whether the fee is fixed or contingent.").

Second, O'Reilly is correct that the applicable interest rate is six percent, not the twelve percent listed in the judgment. *See* Kentucky Revised Statutes ("KRS") 360.040(1). Leach even admits the interest rate is incorrect in her brief. On remand, any interest awarded must comply with KRS 360.040.

In sum, the trial court's decision to deny O'Reilly's motion to set aside the default judgment is affirmed. However, the specific damages, attorney fees, and costs awarded to Leach are vacated. The matter is remanded to the trial court to conduct an evidentiary hearing on damages. Afterwards, the court must issue a new default judgment setting forth proper findings and conclusions. *Deskins*, 314 S.W.3d at 304 ("CR 55.01 clearly contemplates that damages hearings in cases where a default judgment for liability has been entered should be evidentiary in nature to determine the amount of damages and establish the truth of any other allegations or evidence supporting the damage claim. Kentucky Courts have concluded that proceedings of this nature are governed by CR 52.01. The provisions in CR 52.01 are mandatory and require the court to make specific findings of fact and separate conclusions of law before rendering a judgment.") (citations omitted).

For the foregoing reasons, the denial of the motion to set aside the default judgment is affirmed. The award of damages, costs, and fees is vacated, and the matter is remanded to the Whitley Circuit Court to conduct an evidentiary hearing on the specific amounts which should be awarded, followed by issuance of a fresh judgment which contains all necessary findings of fact and conclusions of law.

ALL CONCUR.

BRIEFS FOR APPELLANT:

John F. Kelley, Jr.
London, Kentucky

BRIEF FOR APPELLEE SHARON LEACH D/B/A TOMMY'S TOWING:

Leroy A. Gilbert, Jr.
Corbin, Kentucky